UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

SHANE QUANTE ROBINSON,

       Petitioner,                         Case No. 1:24-cv-1120

v.                                             Honorable Jane M. Beckering

DALE BONN,

       Respondent.
_____/

**OPINION**

      This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (discussing that a district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

**I.      Factual Allegations**

Petitioner Shane Quante Robinson is incarcerated with the Michigan Department of Corrections at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. Following a jury trial in the Berrien County Circuit Court, Petitioner was convicted of one count of carrying a concealed weapon, in violation of Mich. Comp. Laws § 750.227, and was sentenced as a fourth-offense habitual offender, Mich. Comp. Laws § 769.12, to 22 to 76 months' imprisonment. *See People v. Robinson*, Nos. 360935, 360936, 2023 WL 4141162, at *1 (Mich. Ct. App. June 22, 2023). In a separate jury trial in the Berrien County Circuit Court, Petitioner was convicted of assault with intent to murder, in violation of Mich. Comp. Laws § 750.83; felon in possession of a firearm, in violation of Mich. Comp. Laws § 750.224f; carrying a concealed weapon, in violation of Mich. Comp. Laws § 750.227; and two counts of carrying a firearm during the commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.22b. *See id.* In that matter, Petitioner was sentenced, again as a fourth-offense habitual offender, "to 40 to 80 years' imprisonment for assault with intent to murder, 76 months to 20 years' imprisonment for felon-in-possession and carrying a concealed weapon, and two years' imprisonment for each of the felony-firearm charges." *Id.* The felony-firearm sentences "were to be served concurrent to one another but consecutive to the other convictions." *Id.* at *1 n.2.

The Michigan Court of Appeals generally described the facts underlying Petitioner's convictions as follows:

> This case arises from the February 16, 2021 shooting of Wesley Jackson. Jackson, [Petitioner], and Travis Williams were socializing when [Petitioner] suddenly pulled a gun and shot Jackson twice in the back. Jackson was severely injured, but survived the shooting. After the shooting, [Petitioner] and Williams fled in [Petitioner's] SUV. Witnesses identified [Petitioner] as the shooter and [Petitioner] was later arrested.

> Jackson and Williams testified at the preliminary examination and each identified [Petitioner] as the shooter. Subpoenas were issued for both Jackson's and Williams's testimonies at trial. Despite their efforts, police officers were unable to complete service on Jackson. Williams was served the subpoena, but informed officers he would rather go to jail than testify at trial. The trial court found that these witnesses were unavailable under the hearsay exception, MRE 804(a)(5), and their testimonies from the preliminary examination were read to the jury. During closing argument, the prosecutor encouraged the jury to convict [Petitioner] stating Jackson and Williams were truthful and that neither witness had a motive to lie. [Petitioner] was convicted and sentenced as noted.

*Id.*

Petitioner appealed his convictions to the Michigan Court of Appeals, raising two claims for relief. Petitioner first asserted that the trial court violated his rights under the Sixth Amendment's Confrontation Clause "by admitting the witnesses' preliminary examination testimonies." *Id.* Petitioner also argued that the prosecutor erred by "impermissibly bolstering the credibility of unavailable witnesses." *Id.* at *3. The court of appeals rejected Petitioner's arguments and affirmed his convictions on June 22, 2023. *Id.* at *1. On October 31, 2023, the Michigan Supreme Court denied Petitioner's application for leave to appeal because the court was "not persuaded that the questions presented should be reviewed by this Court." *People v. Robinson*, 996 N.W.2d 445 (Mich. 2023).

On August 7, 2024, Petitioner filed his habeas corpus petition. The petition raises four grounds for relief, as follows:

> I. [Petitioner] was denied his Sixth Amendment right to confront the witnesses against him when the trial court erroneously deemed the complaining witnesses as unavailable, and therefore permitted their preliminary exam testimony to be read into the record.
>
> II. [Petitioner] was denied a fair trial where the prosecutor made arguments vouching for the complaining witnesses' credibility, which was improper and unfairly prejudicial and denied [Petitioner] his right to due process pursuant to U.S. Const. amend. XIV, Mich. Const. Art. 1 § 17, 20.

(§ 2254 Pet., ECF No. 1, PageID.6–7 (capitalization, spelling, and punctuation corrected).)

3

## II.    AEDPA Standard

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in

4

light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

**III.     Discussion**

    **A.     Ground I—Confrontation Clause Issue**

As his first ground for relief, Petitioner contends that his rights under the Sixth Amendment's Confrontation Clause were violated when "the trial court erroneously deemed the complaining witnesses as unavailable, and therefore permitted their preliminary exam testimony to be read into the record." (§ 2254 Pet., ECF No. 1, PageID.6.) As support for this ground, Petitioner relies upon the brief that appellate counsel filed in the Michigan Court of Appeals. (*Id.*) On direct appeal, Petitioner took issue with the trial court deeming Williams and Jackson unavailable as witnesses. (ECF No. 1-1, PageID.35.) He also argued that his trial attorney "never had the opportunity to cross-examine either Mr. Jackson or Mr. Williams, as a different attorney . . . was [Petitioner's] counsel at the time of the preliminary exam." (*Id.*, PageID.35–36.)

6

Petitioner also averred that during his preliminary examinations, he "was appearing from the Jail via [Z]oom and was not in the courtroom [with] counsel during the proceedings." (*Id.*, PageID.36.)

The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him." U.S. Const. amend VI; *Pointer v. Texas*, 380 U.S. 400, 403–05 (1965) (applying the guarantee to the states through the Fourteenth Amendment). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). The Confrontation Clause, therefore, prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination. *See Crawford v. Washington*, 541 U.S. 36, 59 (2004). There are two requirements to consider with respect to the unavailability requirement. First, a witness cannot be deemed unavailable unless the government has made a good-faith effort to obtain his or her presence at trial proceedings. *See Ohio v. Roberts*, 448 U.S. 56, 74 (1980). Second, the unavailable witness must have given testimony at previous judicial proceedings against the same defendant, and that testimony must have been subject to cross-examination by that defendant. *See Crawford*, 541 U.S. at 54.

> The Michigan Court of Appeals addressed Petitioner's claim under the following standard:
>
> The Confrontation Clause of the United States Constitution states: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const., Am. VI; *see also* Const. 1963, art. 1, § 20. The Confrontation Clause prohibits "the admission of testimonial statements by a witness who does not appear at trial unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness." *People v. Dendel*, 289 Mich. App. 445, 453; 797 N.W.2d 645 (2010) (citing *Crawford v. Washington*, 541 U.S 36, 53–54 (2004))

*Robinson*, 2023 WL 4141162, at *4. Although the state court cited state authority, *Dendel* specifically cites *Crawford* as the source of the standard. Thus, there is no question that the court of appeals applied the correct standard. Petitioner, therefore, can only overcome the deference afforded state court decisions if the court of appeals' determination was based on an unreasonable application of *Crawford* or if the court of appeals' resolution was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d).

        1.        **Unavailability**

The court of appeals first addressed Petitioner's argument that the trial court had erred by declaring Williams and Jackson unavailable as witnesses. The court of appeals noted that Michigan Rule of Evidence 804(a)(5) sets forth a definition of an "unavailable" witness. *See Robinson*, 2023 WL 4141162, at *2. The court of appeals rejected Petitioner's arguments, concluding that the record "demonstrates reasonable efforts to serve Jackson and Williams were made," noting that Rule 804(a)(5) does not require the prosecution to make "*all possible* efforts." *Id.* (emphasis in original). In making that determination, the court of appeals noted that Jackson successfully evaded service of the subpoena and never appeared for meetings that were scheduled with the investigating detective. *Id.* Jackson had also provided false addresses to the detective. *Id.* The detective "visited various addresses associated with Jackson over 20 times," including Jackson's sister's address, and Jackson's sister told the detective that "she did not know where Jackson lived." *Id.* Moreover, "the detective searched on a daily basis the local jail system and various hospitals in the area to confirm that Jackson had not been arrested or admitted." *Id.* With respect to Williams, the detective "testified that he successfully served Williams with a subpoena. However, Williams told the detective that he would rather serve time in jail than appear in court." *Id.* In light of that response, at Petitioner's trial, the trial court granted the prosecution's request to issue a bench warrant for Williams' failure to appear. *Id.*

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle*, an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." 502 U.S. at 67–68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Thus, the court of appeals' conclusion that the trial court properly deemed Williams and Jackson unavailable under Michigan Rule of Evidence 804(a)(5) is axiomatically correct.

It is possible that an evidentiary ruling—even a ruling that is axiomatically correct under state law—still violates due process. State-court evidentiary rulings can rise to the level of due process violations if they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation marks omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Further, under AEDPA, the court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860

9

(6th Cir. 2000); *see also Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020) (stating that, to obtain habeas relief based on an allegedly improper evidentiary ruling, a petitioner must identify "a Supreme Court case establishing a due process right with regard to the specific kind of evidence at issue").

Petitioner has not met this difficult standard with respect to the question concerning unavailability. Indeed, in the context of review under the AEDPA, the Supreme Court has explicitly cautioned against disturbing a state court's reasonable conclusion regarding unavailability:

> [W]hen a witness disappears before trial, it is always possible to think of additional steps that the prosecution might have taken to secure the witness' presence, *see* [*Ohio v. Roberts*, 448 U.S. 56, 75 (1980)], but the Sixth Amendment does not require the prosecution to exhaust every avenue of inquiry, no matter how unpromising. And, more to the point, the deferential standard of review set out in 28 U.S.C. § 2254(d) does not permit a federal court to overturn a state court's decision on the question of unavailability merely because the federal court identifies additional steps that might have been taken. Under AEDPA, if the state-court decision was reasonable, it cannot be disturbed.

*Hardy v. Cross*, 565 U.S. 65, 71–72 (2011).

Petitioner does not present to this Court any argument regarding this issue other than the arguments that he raised in his brief on direct appeal—arguments that have already been rejected by the Michigan Court of Appeals. Petitioner, therefore, fails to explain how the court of appeals' analysis is in error. Given the explanations given by the detective regarding his attempts to serve Jackson, the court of appeals reasonably determined that the trial court had properly deemed Jackson unavailable to testify. Moreover, although the detective had successfully served Williams, Williams explicitly stated that he would rather go to jail than testify. Under that circumstance, it is difficult to identify what more the detective and the prosecution could have done other than what they did, which is request a bench warrant for Williams' arrest for failure to appear at Petitioner's trial. Thus, the court of appeals reasonably determined that the prosecution had exercised due

diligence and that both Jackson and Williams were unavailable within the meaning of the Confrontation Clause.

### 2.     Prior Opportunity for Cross-Examination

The court of appeals then rejected Petitioner's assertion that he had been unable to cross-examine Jackson and Williams during his preliminary examinations, stating:

> As an initial matter, the trial court did not err by failing to ensure [Petitioner's] physical presence at the preliminary examination. At the time the preliminary examination hearings took place, trial courts across Michigan were subject to Administrative Order No. 2020-6. This order required trial courts to make a good-faith effort to hold all proceedings remotely in response to the COVID-19 pandemic. Thus, there is nothing facially incorrect with [Petitioner's] remote participation.
>
> Moreover, there is nothing in the record showing [Petitioner] was denied the opportunity to cross-examine the witnesses during the preliminary examination. Indeed, the record shows vigorous cross-examination by defense counsel of Jackson and Williams and [Petitioner] was able to discuss cross-examination strategy privately with defense counsel during the proceedings. [Petitioner] does not explain how his cross-examination of the witnesses would have been different had [Petitioner] been physically present with his counsel at the preliminary examination.

*Robinson*, 2023 WL 4141162, at *3.

The United States Court of Appeals for the Sixth Circuit has noted that there exists "some question whether a preliminary hearing necessarily offers an adequate prior opportunity for cross-examination for Confrontation Clause purposes." *Al-Timimi v. Jackson*, 379 F. App'x 435, 437–38 (6th Cir. 2010) (citing, *inter alia, Vasquez v. Jones*, 496 F.3d 564, 577 (6th Cir. 2007) (doubting whether "the opportunity to question a witness at a preliminary examination hearing satisfies the pre-*Crawford* understanding of the Confrontation Clause's guarantee of an opportunity for effective cross-examination" (internal quotation marks omitted)). Thus, Petitioner's challenge is certainly colorable. However, the Supreme Court has never held that a defendant's Confrontation Clause rights are violated when a witness is unavailable for trial and the trial court admits that

witness's preliminary examination testimony. *See id.* at 438. Thus, for purposes of federal habeas review, the Sixth Circuit has concluded that a state court's determination that preliminary examination testimony was properly admitted is not an unreasonable application of clearly established Supreme Court precedent. *Id.* at 438–40; *see also Williams v. Bauman*, 759 F.3d 630, 636 (6th Cir. 2014) (citing *Al-Timimi* with approval and upholding on habeas review the admission of testimony from the petitioner's own preliminary examination).

Furthermore, Petitioner's arguments regarding the fact that he was not physically present in the courtroom during the preliminary examinations and the fact that his trial counsel was not the attorney who cross-examined Williams and Jackson do not change this outcome. The Court recognizes that a criminal defendant has a right to be present at any stage of his criminal proceedings, a right that is rooted in both the Fourteenth Amendment's Due Process Clause and the Sixth Amendment's Confrontation Clause. *See Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) ("[A] defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure."); *Illinois v. Allen*, 397 U.S. 337, 338 (1970) ("One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial."). The Supreme Court, however, has suggested that the Confrontation Clause does not apply to pretrial hearings, repeatedly explaining that "[t]he right to confrontation is basically a trial right." *Barber v. Page*, 390 U.S. 719, 725 (1968); *see also Pennsylvania v. Ritchie*, 480 U.S. 39, 52–53 (1987). In any event, Petitioner does not cite, and the Court has not located, any clearly established federal law concluding that a defendant's Confrontation Clause right is violated when he appears remotely at a preliminary examination via videoconferencing. *Cf. United States v. Benson*, 79 F. App'x 813, 820–21 (6th Cir. 2003) (concluding that the Confrontation Clause does

not prohibit a witness from testifying remotely so long as the witness is properly sworn, subject to full cross-examination, and visible to the defendant and the fact-finder); *United States v. Rosenschein*, 474 F. Supp. 3d 1203, 1208 (D.N.M. 2020) (concluding that conducting a suppression hearing via videoconference would not violate the defendant's Confrontation Clause rights). Likewise, Petitioner does not cite, and the Court has not located, any clearly established federal law concluding that a change in counsel following a preliminary examination where prior counsel was able to cross-examine a witness essentially negates that cross-examination for purposes of the Confrontation Clause and the admission of such preliminary examination testimony later at trial.

Again, Petitioner does not present to this Court any argument regarding this issue other than the arguments that he raised in his brief on direct appeal. Petitioner, therefore, fails to explain how the court of appeals' analysis is in error and fails to explain how the court of appeals' analysis is contrary to, or an unreasonable application of the federal standards set forth above. Petitioner, therefore, is not entitled to relief with respect to ground I.

### B.   Ground II—Prosecutorial Misconduct

As his second ground for relief, Petitioner contends that he was denied a fair trial where the "prosecutor made arguments vouching for the complaining witnesses' credibility, which was improper and unfairly prejudicial and violated Petitioner's due process rights." (§ 2254 Pet., ECF No. 1, PageID.7.) As support for this ground, Petitioner again relies upon the brief that appellate counsel filed in the Michigan Court of Appeals. (*Id.*) On direct appeal, Petitioner argued that the prosecutor "improperly vouched for the credibility of both Mr. Williams and Mr. Jackson" during closing arguments. (ECF No. 1-1, PageID.53.)

For a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "so infected the trial with

13

unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In evaluating the impact of the prosecutor's misconduct, a court should consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner. *See United States v. Young*, 470 U.S. 1, 11–12 (1985). The Supreme Court has described the *Darden* standard as "a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012). The *Parker* Court rejected an attempt to graft any additional requirements on the "very general" *Darden* standard.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. at, 645). Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker*, 567 U.S. at 47 (internal quotation marks omitted).

The Sixth Circuit has identified two types of objectionable vouching. *See United States v. Acosta*, 924 F.3d 288, 299 (6th Cir. 2019); *Johnson v. Bell*, 525 F.3d 466, 482 (6th Cir. 2008). *But see Wogenstahl v. Mitchell*, 668 F.3d 307, 328–29 (6th Cir. 2012) (treating the two aspects of

vouching as part of a single standard). The first type impermissibly places the government's prestige behind the witness to enhance his or her credibility. *See United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 2019); *United States v. Carroll*, 26 F.3d 1380, 1388–89 (6th Cir. 1994). The second type, also known as bolstering, occurs when the prosecutor invites the jury to believe there is other evidence, known to the prosecutor but not introduced into evidence, justifying the prosecutor's belief in the defendant's guilt. *See Francis*, 170 F.3d at 551; *United States v. Medlin*, 353 F.2d 789, 796 (6th Cir. 1965).

Moreover, a prosecutor may not "offer [his or her] opinions as to credibility of a witness or the guilt of a defendant." *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008). As the Supreme Court has noted:

> The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

*United States v. Young*, 470 U.S. 1, 18–19 (1985). However, not every reference to the credibility of a witness is objectionable vouching. "[A] prosecutor may ask the jury to draw reasonable inferences of credibility from the evidence presented." *Willoughby v. White*, 786 F. App'x 506, 513 (6th Cir. 2019).

On direct appeal, the Michigan Court of Appeals addressed Petitioner's prosecutorial misconduct claim under the following standard:

> Under the Sixth Amendment to the United States Constitution, criminal defendants are entitled to a fair trial. U.S. Const., Am. VI. As such, prosecutors have a duty to ensure that the defendant receives a fair trial. *People v. Farrar*, 36 Mich. App. 294, 299; 193 N.W.2d 363 (1971). "The test of prosecutorial [error] is whether a defendant was denied a fair and impartial trial." *People v. Dobek*, 274 Mich. App. 58, 63; 732 N.W.2d 546 (2007). "Issues of prosecutorial misconduct are decided

15

> case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *Id.* at 64. The defendant bears the burden of proving that he was denied a fair and impartial trial. *See, e.g.*, *People v. Lane*, 308 Mich. App. 38, 62; 862 N.W.2d 446 (2014).
>
> A prosecutor's remarks are "evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial to determine whether a defendant was denied a fair and impartial trial." *People v. Brown*, 267 Mich. App. 141, 152; 703 N.W.2d 230 (2005). "A prosecutor may not make a factual statement to the jury that is not supported by the evidence, but he or she is free to argue the evidence and all reasonable inferences arising from it as they relate to his or her theory of the case." *Dobek*, 274 Mich. App. at 66 (citations omitted). However, in closing arguments, prosecutors are generally given great latitude and are "free to argue the evidence and all reasonable inferences from the evidence." *People v. Mullins*, 322 Mich. App. 151, 172; 911 N.W.2d 201 (2017) (citation omitted).
>
> For example, a prosecutor may not ask the jury to convict a defendant on the basis of the prosecutor's personal knowledge, or the prestige of his office. *People v Matuszak*, 263 Mich. App. 42, 54–55; 687 N.W.2d 342 (2004). However, a prosecutor "may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *People v. Thomas*, 260 Mich. App. 450, 455; 678 N.W.2d 631 (2004).

*Robinson*, 2023 WL 4141162, at *3–4. Although the court of appeals cited to state authority for the standard, the standard relied upon is essentially the same as the standards set forth above.

After setting forth the standard, the court of appeals applied it and rejected Petitioner's argument, stating:

> [Petitioner] challenges this statement by the prosecutor made during closing arguments:
>
>> There is really no doubt that there was an intent to kill here, but the real question is why should we believe Wesley [Jackson] and Travis [Williams]? They're not here. Right? So why should we believe what they said? First and foremost, there is zero evidence here for any motive for either Wesley or Travis to lie. What benefit do they receive from coming into court at the prior hearing and testifying under oath, under the pains and penalties of perjury, and make up this entire story, pointing blame at someone who didn't do it? Nothing. They gain nothing from that. They're telling us the truth.
>
> According to [Petitioner], this statement amounted to improper vouching of witnesses who did not appear at trial. We disagree. This statement did not provide

16

>the jury any information it could not discern from the testimony. Rather, it offered the jury several considerations when evaluating Jackson's and Williams's testimonies. The prosecutor's mere suggestion that the jury evaluate the testimonies in these terms is not impermissible. Thus, there is no plain error as to this statement.

*Id.* at *4.

Petitioner does not present to this Court any argument regarding this issue other than the arguments that he raised in his brief on direct appeal. Petitioner, therefore, fails to explain how the court of appeals' analysis is in error. Moreover, Petitioner does not explain how the court of appeals' analysis is contrary to, or an unreasonable application of, the general standards set forth in *Darden* or *Donnelly*.

This Court's review of the court of appeals' determination reveals that it is entirely consistent with the clearly established federal law set forth in *Darden* and *Donnelly*. Upon review of the statement set forth above, the prosecutor did not attempt to vouch for Williams's and Jackson's credibility during closing arguments. Instead, the prosecutor invited the jury to draw an inference that those individuals were telling the truth because they had no reason to lie. Not every reference to the credibility of a witness is objectionable vouching. "[A] prosecutor may ask the jury to draw reasonable inferences of credibility from the evidence presented." *Willoughby v. White*, 786 F. App'x 506, 513 (6th Cir. 2019).

The prosecutor's statements during closing argument did not deny Petitioner a fair trial or improperly affect the outcome of the proceedings. Petitioner, therefore, is not entitled to relief with respect to habeas ground II.

## IV.     Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a Judgment dismissing the petition and an Order denying a certificate of appealability.

Dated: November 15, 2024  /s/ Jane M. Beckering
Jane M. Beckering
United States District Judge